IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOARD OF EDUCATION OF THE
LOS ALAMOS PUBLIC SCHOOLS,

       Plaintiff/Appellant/Cross-Appellee/
       Counter-Defendant,

vs.                                                           Civ. No. 08-233 RHS/WDS

JARED DREICER and JANET GRIEGO DREICER
on behalf of Z.D.,

       Defendants/Appellees,

and

JARED DREICER and JANET GRIEGO DREICER,
and JARED DREICER and JANET GRIEGO DREICER,
on behalf of Z.D.,

       Cross-Appellants/Counter-Plaintiffs.

## MEMORANDUM ORDER AND OPINION

**THIS MATTER** comes before the Court in consideration of Defendants' Motion for

Judgment on the Administrative Record and Brief in Support of Motion ("Motion"), filed

October 31, 2008 **[Docket No. 36]** and Plaintiff Board of Education of the Los Alamos Public

Schools' Individuals with Disabilities Education Act [("IDEA" or "Act")] Appeal Brief

("Appeal Brief"), filed October 31, 2008 **[Doc. No. 37]**.  Having considered the parties'

submittals, the relevant authorities and being otherwise advised in the premises, the Court finds

that Defendants' Motion is not well-taken and will be denied and Plaintiff's Appeal Brief is

well-taken and will be granted, as set forth below.

### *Background*

Plaintiff Board of Education of Los Alamos Public Schools ("Board") brought this action seeking, *inter alia*, reversal of an administrative Due Process Hearing Officer's ("DPHO's") decision that Z.D., a blind student, was deprived of a free appropriate public education ("FAPE") in his seventh grade year and in the summer of 2007.  (See Complaint/Petition for Judicial Review and Attorney's Fees and Costs pursuant to 20 U.S.C. § 1415[1] ("Complaint"), filed Mar. 5, 2008 **[Doc. No. 1]**).  Defendants Jared and Janet Dreicer (Z.D.'s parents), on behalf of Z.D., cross-appealed seeking, *inter alia*, reversal of the DPHO's conclusion that Z.D. was not deprived of a FAPE in the sixth and eighth grades.  (See Answer to Complaint, Cross-Complaint/Petition for Judicial Review and Counterclaims for Violation of Section 504 of the Rehabilitation Act and Americans with Disabilities Act and for Attorneys Fees and Costs ("Answer/Cross-Complaint"), filed Mar. 25, 2008 **[Doc. No. 6]**).

### *Framework of the IDEA*

The IDEA provides federal funding to state and local educational agencies who must then provide educational opportunities for students with disabilities.  One of the purposes of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living."  20 U.S.C. § 1400(d)(1)(A).  "The FAPE concept is the central pillar of the IDEA statutory structure: states must provide all eligible students with a FAPE to receive federal funding under the IDEA."  Sytsema v. Academy Sch. Dist. No. 20, 538 F.3d 1306, 1312 (10th

---

[1]Plaintiff no longer seeks recovery of its "attorneys fees and costs incurred in connection with the special education due process hearing in NMPED DPH 0708-10."  (Notice of Rule 41(a)(1)(ii) Voluntary Dismissal with Prejudice of Certain Claims Against Defendants, filed Dec. 12, 2008 **[Doc. No. 47]**).

Cir. 2008) (citing 20 U.S.C. § 1412(a)(1)).  "To provide an eligible student with a FAPE, states

must develop an IEP [("Individualized Education Program")] for each qualifying student."  Id.

(citing O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. No. 233, 144 F.3d 692, 698 (10th Cir.

1998)).  "The IEP is a written document that provides the basic plan and goals for the student's

education over the academic year."  Id.  (citing § 1414(d)(1)(A)(i)).  "State school officials

develop each IEP through a collaborative process that is a central characteristic of the IDEA

framework . . . [and that] places special emphasis on parental involvement."  Id. (citation

omitted).

        "A parent of a child with a disability may contest any action by the school district that the

parent believes deprives the child of a FAPE. 20 U.S.C. § 1415(b)(6).  The educational agency

must then provide the parent with an impartial due process hearing to evaluate the complaint. 20

U.S.C. § 1415(f).  Any party aggrieved by the outcome of the due process hearing may then

appeal the decision in a United States District Court.  20 U.S.C. § 1415(i)(2)(A)."  Johnson ex

rel. Johnson v. Olathe Dist. Schools Unified School Dist. No. 233, 316 F.Supp.2d 960, 963

(D.Kan. 2003).  "When a dispute reaches federal court, the court applies a two-step analysis

based on the Act's dual emphasis on substance and procedure.  First, the court determines

whether the IEP development process complied with the Act's procedures.  Second, the court

evaluates whether the IEP's substance provided the student with a FAPE.  If the IEP satisfies

both steps, then the school district has complied with the Act."  Sytsema, 538 F.3d at 1312-13

(citations omitted).

        However, "[a]n IEP's failure to clear all of the Act's procedural hurdles does not

necessarily entitle a student to relief for past failures by the school district."  Id., 538 F.3d at

1313 (citations omitted).  Where a court finds only a procedural violation, it "inquire[s] whether

the violation resulted in the denial of a FAPE." Id.  In making this inquiry, "the relevant question is whether the procedural defect ... amounted to a substantive failure to provide personalized instruction with sufficient support services to permit the child to benefit educationally." Garcia v. Bd. of Educ. of Albuquerque Pub. Schs., 520 F.3d 1116, 1126 (10th Cir. 2008) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 203 (1982)) (cited in Sytsema, 538 F.3d at 1314 (internal quotation marks omitted)).

"If a school district has complied with the procedural requirements for the IEP, the court must turn its attention to whether the IEP was 'reasonably calculated' to provide the child with 'educational benefits.'" Sytsema, 538 F.3d at 1313 (citation omitted).[2]  "The IEP complies with the Act's substantive standards if it provides the disabled student with '[a] basic floor of opportunity . . . [that] consists of access to specialized instruction and related services which are individually designed to provide educational benefit . . . .'  This court has interpreted the Rowley standard to require an educational benefit that is more than *de minimis*." Id. (citations omitted). However, the Act "does not require an education 'guaranteed to maximize the child's potential.'" Id. (citation omitted).  "As a result, we apply the 'some benefit' standard the Supreme Court adopted in Rowley." Id. (citation and footnote omitted).

### *Standard of Review*

"The IDEA sets up a unique standard for a federal court's review of the administrative due process hearing." L.B. and J.B. ex rel. K.B. v. Nebo School District, 379 F.3d 966, 973 (10th Cir. 2004) (citing 20 U.S.C. § 1415(i)(2)).  A district court reviewing such a decision:

---

[2]In analyzing whether an IEP substantively complies with the Act, the Tenth Circuit "conclude[d] that the court should consider only the *written* IEP [rather than any oral offers] during its review." Id., 538 F.3d at 1315 (italics added).

> shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

Sec. 1415(i)(2)(B).  The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit")

further explains that a district court:

> applies a modified *de novo* standard in reviewing a hearing officer's decision under the IDEA.  It looks at the record of the administrative proceedings and decides, based on a preponderance of the evidence, whether the requirements of the IDEA are met.  In so doing, it must give 'due weight' to the hearing officer's findings of fact, which are considered *prima facie* correct.  Although the district court may accept additional evidence, such evidence is merely supplemental to the administrative record.  The district court's proceedings must maintain the character of review and not rise to the level of a *de novo* trial.

K.B., 379 F.3d at 973-74 (citations omitted; underlining added).

*Burden of Proof*

"The plain text of IDEA is silent on the allocation of the burden of persuasion."  Schaffer

ex rel. Schaffer v. Weast, 546 U.S. 49, 56, 126 S.Ct. 528, 534 (2005).  In Schaffer, the Supreme

Court explained that absent Congressional intent otherwise, it would "conclude that the burden

of persuasion lies where it usually falls, upon the party seeking relief."[3]  Schaffer, 546 U.S. at

57-58.  Accordingly, this Court concludes that the party challenging the outcome of the state

administrative decision in this case bears the burden of persuasion.  See, e.g., Johnson v.

Independent Sch. Dist. No. 4, 921 F.2d 1022, 1026 (10th Cir. 1990) (noting that "the burden of

proof in these matters rests with the party attacking the child's individual education plan");

Miller ex rel S.M. v. APS, 455 F.Supp.2d 1286, 1305 (D.N.M. 2006) (finding that the AAO

correctly concluded that where parents present an IDEA challenge, "they bear the burden of

---

[3]The Supreme Court held that "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief."  Schaffer, 546 U.S. at 62.

proof" (citation omitted)); Hinson ex rel. N.H. v. Merritt Educational Center, 579 F.Supp.2d 89,

100 (D.D.C. 2008) (explaining that "the burden of proof is always on the party challenging the

administrative determination, who must at least take on the burden of persuading the court that

the Hearing Officer was wrong" (internal quotation marks omitted)) (citing Reid v. Dist. of

Columbia, 401 F.3d 516, 521 (D.C.Cir. 2005) (other citation omitted)).  Accordingly, Plaintiff

and Defendants in this case bear the burden of persuasion with respect to their various claims

challenging the decision of the DPHO.

**I.  Defendants' Motion for Judgment on the Administrative Record**

"Student [Z.D.] is, and has been, eligible for special education and related services as

visually impaired and gifted since kindergarten."  (Final Decision ("Decision")[4] at 4 ¶2 (citing

Stipulation No. 2; Ex. K)).  In their Motion, Defendants seek reversal of "that portion of the

DPHO Decision holding that [the Dreicers] did not meet their burden of proving, by a

preponderance of the evidence, that the Schools denied a [FAPE] to Z.D. for the period of

December 10, 2005 to May 2006 (sixth grade) and August 2007 to May 2008 (eighth grade)."

(Motion at 49).  Defendants also seek an order granting their request that Z.D. be provided with

additional equitable relief.  (See id.).

*Sixth Grade*

The DPHO explained that she did not review the Individualized Education Program

("IEP") of September 19, 2005 "that controlled Student's program for the 2005-2006 [sixth

---

[4]The DPHO's Decision is contained in the Administrative Record ("AR"), Vol. V at
Bates No. 955.  A copy of the Decision is also attached to Defendants' Answer/Cross-Complaint
**[Doc. No. 6]**.

-6-

grade] school year . . . . [because it] falls outside the statutory period."[5]  (Decision at 20).

However, after examining "the evidence of the services actually delivered to Student pursuant to

that IEP[,]" (Decision at 20), the DPHO found that "there was generally *insufficient evidence*

*available to evaluate the adequacy of the program Student received during that [sixth grade]*

*year*[,]" (Decision at 6 ¶28 (emphasis added)).  Thus, the DPHO concluded that "Parents did not

meet their burden of proving that the District failed to provide Student a FAPE in sixth grade."

(Decision at 25 ¶6).

Defendants challenge the DPHO's conclusion, arguing that Z.D. was denied a FAPE in

sixth grade for the following reasons: (A) Braille instruction and transcription services were not

provided, (B) specialized math instruction was not provided, (C) assistive technology ("AT")

instruction for the Braille Note was not provided, and (D) the school failed to provide orientation

and mobility ("O & M") services by a licensed O & M specialist.  (See Motion at 30, 34, 35, 37).

The Court will address each of Defendants' proffered reasons below.

   *A. Braille instruction and transcription services*

Defendants argue that Z.D. was denied a FAPE due to a lack of Braille instruction.[6]  This

argument rests predominantly on Defendants' assertion that "the IEP was silent as to any plan

for development of [Braille] skills."[7]  (Motion at 32).  The DPHO agreed that although

---

[5]Despite the DPHO's statement that the September 2005 IEP was "not reviewed," she made several findings of fact regarding Z.D.'s IEP for sixth grade.  (See, e.g., Decision at 6, ¶¶24, 26).

[6]Inexplicably, Plaintiff wholly fails to address Defendants' argument that Z.D. was denied a FAPE due to a lack of instruction in Braille.

[7]Defendants also assert that "Z.D. clearly needed Braille instruction in sixth grade." (Motion at 31).  However, Defendants do not cite to any, much less a preponderance of, evidence, in support of this statement.

"Student's IEPs should have included goals and objectives for instruction in Braille, Nemeth code, Advanced Literary Braille and computer Braille code . . . . [n]o goals related to instruction in Braille or other compensatory skills were found" in Z.D.'s sixth grade IEP.  (Decision at 6 ¶¶23, 26).

In developing a child's IEP, an IEP team must consider several factors, including: (1) the strengths of the child; (2) the concerns of the parents for enhancing the education of their child; (3) the results of the initial or most recent evaluation of the child; and (4) the academic, developmental and functional needs of the child.  See  20 U.S.C § 1414(d)(3)(A).  The DPHO correctly noted that "[i]n the case of a blind student, there are special factors that the [IEP] team must address."  (Decision at 19).  "Specifically, the team must provide for instruction in Braille and the use of Braille unless the team determines after an appropriate evaluation that it is not appropriate for the child."  (Decision at 19); see 20 U.S.C § 1414(d)(3)(B)(iii).

However, assuming *arguendo* that the IEP team violated the requirements of the IDEA in failing to specifically address goals, objectives and the provision of instruction regarding Braille in Z.D.'s sixth grade IEP document, such a violation does not necessarily entitle a student to relief under the Act.  In this situation, the Court must determine "whether the procedural defect ... amounted to a substantive failure to provide personalized instruction with sufficient support services to permit the child to benefit educationally."  Garcia, 520 F.3d at 1126 (quoting Rowley, 458 U.S. at 203) (cited in Sytsema, 538 F.3d at 1314 (internal quotation marks omitted)).

The absence of goals and objectives regarding Braille instruction does not necessarily mean that Z.D. received no instruction in Braille.  For example, some evidence suggests that

Z.D. received instruction in Nemeth code.[8]  (See AR, Vol. IV, Tr. 914:9-17).  Moreover,

Defendants do not challenge the DPHO's finding that the evidence is insufficient to evaluate the

adequacy of the program provided to Z.D. in sixth grade.  Nor is the Court persuaded that the

DPHO's finding is incorrect.  Accordingly, the Court concludes that Plaintiff's procedural

failure to include goals and objectives regarding Braille instruction in Z.D.'s sixth grade IEP did

not amount to a substantive failure that deprived him of a FAPE.

Defendants also contend that the DPHO "determined that the claim for this violation of

Z.D.'s rights and denial of a [FAPE] was outside of the two year statute of limitations for IDEA

claims." (Motion at 33 (citing Decision at 20)).  However, nothing in the DPHO's Decision

indicates that she denied Defendants' IDEA claims regarding Z.D.'s sixth grade year on this

basis.  Although the DPHO determined that the IEP developed on September 19, 2005 was

outside the two year statute of limitations, as previously noted, she made findings of fact

regarding Z.D.'s sixth grade IEP and examined evidence of services provided to Z.D. pursuant to

that IEP.  (See Decision at 6, 20).

Almost as an afterthought, Defendants contend that "by not providing Z.D. with a plan

for needed Braille instruction, the Schools also failed to provide Z.D. with transcription services

by a person trained and qualified to prepare materials for Z.D." (Motion at 33).  The rationale

for this argument is unclear, and Defendants fail to further develop this argument.  Defendants

similarly fail to challenge the DPHO's finding that the evidence is insufficient to evaluate the

---

[8]Nemeth Braille Code "provide[s] a system of symbols which will allow technical
literature to be presented and read in braille."  Amer. Ass'n of Workers for the Blind, Ass'n for
Education of the Visually Handicapped and the Nat'l Braille Ass'n, THE NEMETH BRAILLE CODE
FOR MATHEMATICS AND SCIENCE NOTATION 1972 REVISION 1 (American Printing House for the
Blind 1987).

adequacy of the program received by Z.D. in sixth grade.  Accordingly, the Court does not find

that Z.D. was deprived of a FAPE in sixth grade due to a lack of transcription services.

        B. *Specialized math instruction*

        Defendants argue that Plaintiff deprived Z.D. of a FAPE by failing to implement the IEP

to "provide Z.D. with special education consisting of three hours per week of direct, specialized

instruction in the area of math."  (Motion at 34).  However, Defendants fail to show by a

preponderance of the evidence that Plaintiff did not provide Z.D. with the math instruction set

forth in his sixth grade IEP.

        There is evidence that Z.D. experienced academic difficulty sometime during his sixth

grade year.[9]  (AR, Vol. II at Bates No. 314 (indicating that Z.D. has "difficulty w/ fractions,"

"needs help learning how to focus & not get distracted by auditory influences," and discussing

possible retention "if grades [and motivation] don't improve")).  The DPHO found that in the

latter half of sixth grade, Z.D. "was becoming increasingly resistant to using the Perkins Braille

Writer . . . . [and] was trying to adapt the BrailleNote for recording his math work . . . ."

(Decision at 7 ¶29).  The DPHO concluded that "Student was apparently so distracted by his

efforts to adapt the BrailleNote that he fell far behind in his mathematics."  (Decision at 7 ¶29).

        Defendants claim that "the teacher responsible for delivering the specialized math

instruction had advised Z.D.'s parents that she was not qualified or able to provide the

specialized instruction required by Z.D.'s IEP."  (Motion at 35).  Ms. Dreicer testified that she

_____

        [9]There is no record evidence of the grades that Z.D. received in sixth grade and Z.D.
entered seventh grade the following school year.

asked Peggy Morris[10] to provide Z.D. with "some additional one-on-one work, specifically in

Nemeth."  (AR, Vol. IV at Bates No. 756, Transcript ("Tr.") 855:9-10).  According to Ms.

Dreicer, Ms. Morris "said she could not do that . . . that she was not a certified math teacher and

she essentially refused to do it."  (Id. Tr. 855:11-14).  However, Ms. Dreicer also testified that

she believed Ms. Morris knew Nemeth code and instructed Z.D. in Nemeth code.  (See id. Tr.

914:9-17).

        Thus, according to Ms. Drecier, although Ms. Morris refused to provide "additional one-

on-one work" with Z.D., she did provide instruction in Nemeth and "was going into the

classroom [with Z.D.] when they were doing math."  (Id. Tr. 917:17-19).  The Court concludes

that while the Dreicers may have been dissatisfied with certain services provided to Z.D., they

do not show, by a preponderance of the evidence, that Z.D. failed to receive the math instruction

provided for in his sixth grade IEP, or that his teachers were unqualified or unable to provide

such instruction.

        Finally, although the school district apparently did not agree that Extended School Year

("ESY") services were required following the completion of sixth grade, "it did provide Student

with ESY [services] in the summer of 2006 on the recommendation of Student's sixth grade

vision and math teachers."  (Decision at 16 ¶112 (citing Ex. BB)).[11]  Following the provision of

ESY services in the summer of 2006, Z.D. "tested into pre-algebra before seventh grade."  (AR,

_____

        [10]In at least one document, Ms. Morris identifies herself as a "Teacher of the Visually
Impaired" and an "Orientation & Mobility Specialist."  (AR, Vol. II at Bates No. 335 (ESY
Recommendation)).  The DPHO found that the sixth grade vision teacher's "licensure and
credentials were not of record."  (Decision at 6 ¶25 (citing Ex. AA)).

        [11]On March 9, 2006, the IEP team recommended that Z.D. receive 32 hours of ESY
services in math, organization and mobility skills over a period of 4 to 6 weeks.  (See AR, Vol. II
at Bates No. 334).

Vol. III, Tr. 549).  Thus, even assuming that Z.D. had not received some math instruction during

the regular sixth grade school year, he apparently received supplemental and/or remedial math

instruction as part of ESY services provided to him in the summer of 2006.

      *C.  Assistive Technology re: the BrailleNote*

      Defendants correctly note that "[e]ach public agency must ensure that assistive

technology devices or assistive technology services, or both . . . are made available to a child

with a disability if required as a part of the child's (1) special education; (2) related services; or

(3) supplementary aids and services."  34 C.F.R. § 300.105(a) (internal capitalization and

citations omitted; formatting altered).  The school has provided Z.D. with a BrailleNote[12] since

fourth grade, and the parties do not dispute the adequacy of the device itself.  (Decision at 4 ¶12;

15 ¶102).  Rather, Defendants contend that Plaintiff's "failure to provide Z.D. with instruction in

the Braille Note . . . denied Z.D. a [FAPE]."  (Motion at 37).

      The DPHO determined that "[t]he level of support in the use of the BrailleNote available

to Student through the District is sufficient to confer FAPE."  (Decision at 16 ¶108).[13]  Mr.

Dreicer testified that Z.D. produced his math work in Microsoft Word, rather than Nemeth code,

"[b]ecause he would [otherwise] have to do it on the braille Perkins."  (AR, Vol. IV, Tr. 633:25-

---

    [12]The BrailleNote is "an AT device that facilitates note taking, calendaring, Internet access and other functions."  (Decision at 4 ¶12 (citing Stipulation No. 5)).  The sixth grade IEP team described the BrailleNote as "an electronic notetaker."  (AR, Vol. II at Bates No. 302).

    [13]In reaching this determination, the DPHO specifically found that: (1) "[t]he manufacturer of the BrailleNote conducted two training sessions with Student and his teachers to explain and demonstrate the device and its various functions."  (Id. ¶103 (citing Tr. 333-35)); and (2) "[a] comprehensive user manual was also provided with the BrailleNote which Student has studied and used to develop extensive skills in the use of the device."  (Id. ¶104 (citing Tr. 335-36)).

634:3; 634:22-24).[14]  Thus, in sixth grade, Z.D. was apparently attempting to adapt the

BrailleNote, using Microsoft Word (instead of Nemeth code), to complete his math assignments.

While the DPHO found that Z.D.'s attempts to adapt the BrailleNote caused him to fall behind in

math, it is not clear that this problem resulted from a lack of assistive technology services.

Ms. Drecier testified that she asked Ms. Morris why Z.D. was allowed to spend so much

time trying to adapt the BrailleNote for his math work, but "do[es] n[o]t remember what [Ms.

Morris'] explanation was."[15]  (Id. Tr. 915:9-14).  Some of the evidence suggests that Z.D.

resisted using the Perkins Braille writer for his math assignments, when the device was intended

for that purpose, in favor of attempting to adapt the BrailleNote, which was not.  (See, e.g., AR,

Vol. IV, Tr. 633-34 (indicating that the Perkins Braille writer was compatible with Nemeth code,

but the BrailleNote that Z.D. used in sixth grade was not)).  Having considered the record, the

Court agrees that the level of support provided regarding the use of the BrailleNote did not deny

Z.D. a FAPE in sixth grade.

### D.  Orientation and Mobility services

Defendants contend that during the sixth grade, Plaintiff "failed to provide Z.D. with

orientation and mobility services by a licensed orientation and mobility specialist[,] [and the

failure to do so] . . . . denied [Z.D.] a [FAPE]."  (Motion at 38 (citation omitted)).  The DPHO

found that O & M services were "delivered by licensed, certified O & M specialists."  (Decision

---

[14]  Mr. Dreicer also indicated that Z.D. chose not to use the Perkins because it "would significantly slow him down."  (Id. Tr. 634:4-6).

[15]The DPHO noted that Z.D.'s parents "disagreed with the latitude the sixth grade vision teacher allowed Student in pursuing the BrailleNote adaptations that caused him to fall so far behind in math."  (Decision at 7 ¶30).  Nothing indicates that Ms. Morris testified at the administrative due process hearing.

at 5 ¶15).  However, the DPHO did not otherwise specifically address the delivery of O & M

services, noting that "[t]he adequacy of these related services is not in dispute."  (Decision at 5

¶15).  As previously noted, the DPHO also found that "there was generally insufficient evidence

available to evaluate the adequacy of the program Student received during that [sixth grade]

year."  (Decision at 6 ¶28).

　　　　In its response, Plaintiff argues, *inter alia*, that: (1) Defendants raise this issue for the

first time in their Motion before this Court, and (2) Defendants cite to evidence that is not part of

the administrative record.  (See Board's Response to Defendants' Motion ("Response") at 24-25,

filed Nov. 21, 2008 **[Doc. No. 41]**).  Defendants do not deny that they assert this issue for the

first time in their Motion; nor do they offer any explanation for doing so in their reply.  Because

this issue was neither raised nor addressed in the administrative proceedings below, it has not

been exhausted.  Defendants do not allege that a failure to exhaust is excused under any

recognized exception.  See, e.g., 20 U.S.C. § 1415(i)(2) (excusing a failure to exhaust if the relief

sought is not available under the IDEA).

　　　　In this Circuit, a plaintiff is required "to exhaust IDEA's administrative procedures and

remedies before filing suit in federal court."  Ellenberg v. New Mexico Military Institute, 478

F.3d 1262, 1267 (10th Cir. 2007).[16]  Because Defendants have not exhausted their claim that

Plaintiff failed to provide adequate O & M services to Z.D. in sixth grade, it is not entirely clear

---

[16]Exhaustion permits agencies to consider issues requiring the exercise of their discretion
and expertise, allows technical issues and a factual record to develop fully before judicial
review, prevents deliberate disregard of agency procedures established by Congress, and avoids
unnecessary judicial decisions by giving agencies the first opportunity to correct errors.  See
Association for Community Living v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993).

whether this Court has the authority to consider the claim.[17]  However, even considering the

argument and evidence presented by Defendants on this issue, the Court is not persuaded that

Z.D. was denied a FAPE in sixth grade based on a failure to provide O & M services through a

licensed and/or certified O & M specialist.

   *Eighth Grade*

   In her Decision, the DPHO concluded that "Parents did not meet their burden of proving

that the program as designed and implemented for eighth grade deprives Student of [a] FAPE."

(Decision at 25 ¶12).  Defendants contend that Plaintiff denied Z.D. a FAPE in eighth grade

because the Schools: (A) failed to provide adequate and required transcription and adaptation

services; (B) failed to provide adequate specialized instruction in Braille; (C) failed to provide

assistive technology instruction; (D) failed to provide Z.D. with adequate special education by a

highly qualified special education teacher; and (E) significantly impeded the Dreciers'

opportunity to participate in the decision-making process regarding the provision of a FAPE to

Z.D.  (See Motion at 39-46).

   Among her specific findings, the DPHO found that Student's "IEP for eighth grade is

replete with goals and objectives for compensatory skills."  (Decision at 10 ¶57 (citing Exh FF;

Tr 777-78)).  The DPHO noted that a "new vision teacher was hired for eighth grade and this

teacher is licensed in special education and as a TVI with nine years experience as a vocational

rehabilitation counselor for the visually impaired."  (Decision at 10 ¶59 (citations omitted)).  The

DPHO found that "Student meets with the new vision teacher every morning . . . where she

---

   [17]See Ellenberg, 478 F.3d at 1279 (directing the district court to dismiss plaintiffs' IDEA
claim for lack of jurisdiction due to plaintiffs' failure to exhaust the IDEA's procedural
mechanisms).

provides instruction in Student's areas of need as identified in the IEP and by Student, including

pre-teaching concepts that she identifies in Student's instructional materials."  (Decision at 10

¶60 (citations omitted)).[18]  In addition, the DPHO found that the new vision teacher "visits

Student's classes and confers with Student's teachers individually to answer questions and to

assist them in modifying their instruction as needed to accommodate Student's blindness."

(Decision at 11 ¶61 (citations omitted)).  In light of these findings, the DPHO concluded that the

"District has delivered specialized instruction in eighth grade adequate to confer [a] FAPE."

(Decision at 11 ¶63).

      The DPHO found that the School acquired "all of Student's textbooks in embossed

Braille for all of his classes except the gifted science classes in seventh and eighth grade."

(Decision at 13 ¶85 (citation omitted)).[19]  The DPHO also found that "the new vision teacher is

familiar with the BrailleNote and . . . . [w]hen Student has questions that the new vision teacher

cannot answer, she seeks assistance from the manufacturer or other BrailleNote users . . . ."

(Decision at 15 ¶¶105, 106 (citations omitted)).  The DPHO noted that Z.D. "prefers to have

consumable materials provided in electronic form on his BrailleNote," but concluded that the

debate concerning his "preference to receive and complete his consumable instructional

materials in algebra in electronic form for processing in Word format on the BrailleNote rather

than embossed in Nemeth code needs to be resolved by a highly qualified TVI after a thorough

---

[18]The DPHO also found that the new vision teacher "is available . . . to meet with Student after school to provide supplemental direct instruction as indicated in Student's IEP."  (Decision at 11 ¶62 (citation omitted)).

[19]Although the transcription of Z.D.'s eighth grade science book was not complete, "the new vision teacher reported that Student had all the volumes needed for the immediate lessons currently planned."  (Decision at 13 ¶88 (citations omitted)).

assessment or evaluation of Student's current abilities."  (Decision at 14 ¶¶92, 96 (citations omitted)).

In their Motion, Defendants often group multiple factual allegations into one paragraph. Instead of providing a point cite for each allegation, however, Defendants too often conclude the paragraphs with a general citation to multiple pages of text in their "Statement of Facts" section, each page of which, in turn, contains numerous statements and citations.[20]  This form of "citation" is tantamount to no citation whatsoever.  The Court will not sift through the voluminous statements and citations in Defendants' "Statement of Facts" section only to speculate as to which of those statements and/or citations Defendants intended as support for the individual allegations set forth in their argument section.

Plaintiff's response to the arguments raised by Defendants on the issue of whether Z.D. received a FAPE in the eighth grade is equally unhelpful.  Rather than specifically countering any of Defendants' arguments set forth above, the entirety of Plaintiff's response can be summed up in its assertion that "[t]here is nothing in the administrative record that even tends to show that Student did not receive more that [sic] *de minimis* education in the first half of 8th grade." (Response at 26).

Defendants' argument that Plaintiff deprived the Dreicers of an opportunity to participate in the decision-making process rests primarily on the cessation of weekly "vision team" meetings.[21]  However, Defendants do not point to any authority indicating that such weekly

_____

[20]For example, the second paragraph of Defendants' Motion at page 40 contains at least four factual allegations, and cites to five pages of text in Defendants' "Statement of Facts."  (See Motion at 40 (citing Statement of Facts, pp. 22-26)).

[21]Defendants do not dispute the DPHO's finding that "Parents have attended all of the IEP meetings subject to review in these due process proceedings and the meeting notes indicate

meetings are required under the IDEA.  Defendants also allege that Plaintiff deprived the

Dreicers of opportunities to participate following issuance of the DPHO's decision.  However,

nothing in the record indicates that Defendants have raised and addressed this claim in

administrative proceedings below, thus, it is not clear that this Court even has the authority to

address such a claim at this juncture.

Having considered the parties' arguments and having reviewed the AR, this Court

concludes, as did the DPHO, that Defendants fail to meet their burden of showing that "the

program as designed and implemented for eighth grade" deprived Z.D. of a FAPE.  (Decision at

25 ¶12).  Defendants do not offer any argument or point to any evidence that persuades the Court

that the DPHO's findings of fact regarding Z.D.'s eighth grade year are incorrect.  Moreover, the

parties do not dispute that Z.D. was receiving passing grades in his eighth grade classes.[22]

Accordingly, the Court concludes that based on a preponderance of the evidence, the "some

benefit" standard, as set forth in Rowley and adopted in Sytsema, was met.  Defendants' Motion

will be denied and the DPHO's conclusion that Z.D. was not deprived of a FAPE in sixth grade

and eighth grade will be affirmed.

**II.  Plaintiff's Appeal Brief**

Plaintiff claims that it was aggrieved by the DPHO's decision "concluding that it

deprived Student of a [FAPE] throughout 7th grade and during the summer between 7th and 8th

---

that parents participate in team discussions extensively."  (Decision at 17 ¶124 (citations
omitted)).

[22]An undated grade report for "Marking Period 3" shows that Z.D. was earning mostly As
and Bs in his eighth grade general education and gifted classes.  (See "Historical Grades," AR at
270).  The report shows that, of fourteen grades received in seven classes, Z.D. received one C-
in Spanish and one C+ in gifted science. (AR at 270).

grade and by the relief awarded Student and Parents against the District on the basis of those

decisions." (Appeal Brief at 2-3). In its brief, Plaintiff alleges that the DPHO erred in reaching

her decision for the following reasons: (A) the DPHO failed to apply the proper legal standards

and analysis in ruling that the District denied Z.D. a FAPE in the 7th grade and her decision is not

supported by substantial evidence; (B) the DPHO failed to apply the proper legal standards and

analysis in ruling that the District denied Z.D. a FAPE based on its refusal to provide ESY

services to Z.D. for the summer following his 7th grade year and her decision is not supported by

substantial evidence; and (C) the DPHO failed to apply the proper legal standard and analysis in

ruling that Z.D.'s parents were entitled to financial reimbursement for education services that

they obtained during the summer following Z.D.'s 7th grade year. (See Appeal Brief at 2).

     A.    *Whether the DPHO applied the proper legal standard in determining that Z.D.*
          *was denied a FAPE in seventh grade*

     Plaintiff contends that the DPHO applied the incorrect legal standard in considering

whether Z.D. received a FAPE in seventh grade. In support of this contention, Plaintiff

highlights two statements in the DPHO's Decision: (1) "A child has received FAPE if the school

district complied with procedural requirements and the IEP was reasonably calculated to enable

the child with disabilities to receive *meaningful educational benefit*." (Decision at 19

(discussing legal authority) (emphasis added)); and (2) Z.D.'s IEP in seventh grade was "not

reasonably calculated to confer *meaningful educational benefit*." (Decision at 9 ¶49 (emphasis

added)). Plaintiff further claims that, in her Decision, the DPHO "never asks and certainly does

not answer the question as to whether Student received *some educational benefit*." (Appeal

Brief at 19 (emphasis added)). Defendants assert that the DPHO applied the correct legal

standard and correctly concluded that Plaintiff deprived Z.D. of a FAPE in seventh grade.

As previously noted, the Tenth Circuit interprets <u>Rowley</u> as requiring "an educational benefit that is more than *de minimis*."  <u>Sytsema</u>, 538 F.3d at 1313 (citing <u>Urban v. Jefferson County Sch. Dist. R-1</u>, 89 F.3d 720, 726-27 (10th Cir. 1996) and <u>Rowley</u>, 458 U.S. at 200). Further recognizing that the IDEA "does not require an education guaranteed to maximize the child's potential[,]" the Tenth Circuit "appl[ies] the *some benefit* standard the Supreme Court adopted in <u>Rowley</u>."  <u>Sytsema</u>, 538 F.3d at 1313 (citations and internal quotation marks omitted; emphasis added).  In <u>Sytsema</u>, the plaintiffs argued that "the relevant standard requires a *meaningful benefit* whereby the student achieves significant learning."  <u>Sytsema</u>, 538 F.3d at 1313 n.7 (internal quotation marks omitted; emphasis added).  The Tenth Circuit acknowledged that other circuits have adopted the "meaningful benefit" standard[23] and noted that "it is difficult to distinguish between the requirements of the 'some benefit' and the 'meaningful benefit' standards."[24]  <u>Sytsema</u>, 538 F.3d at 1313 n.7.  Nevertheless, the <u>Sytsema</u> Court declined the plaintiffs' invitation to apply the "meaningful benefit" standard and proceeded to "evaluate the case at bar with th[e] [*some benefit*] standard in mind."  <u>Sytsema</u>, 538 F.3d at 1313 n.7 (citing <u>O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. No. 233</u>, 144 F.3d 692, 699 (10th Cir. 1998)).

---

[23]The Tenth Circuit points to <u>Polk v. Central Susquehanna Intermediate Unit 16</u>, 853 F.2d 171, 184 (3d Cir. 1988) (holding that the relevant standard should be characterized as a "meaningful benefit") and <u>Deal v. Hamilton county Bd. of Educ.</u>, 392 F.3d 840, 862 (6th Cir. 2004) (adopting the "meaningful benefit" standard) as examples of circuits that have adopted the "meaningful benefit" standard.  <u>See also</u>, Lester Aron, <u>Too Much or Not Enough: How Have the Circuit Courts Defined a Free Appropriate Public Education After *Rowley*</u>?, 39 Suffolk U. L. Rev. 1, 7 (2005) (concluding that the circuits "are severely divided on the critical issue of the standard for a FAPE" because "six Circuit Courts of Appeals apply the 'meaningful benefit' standard, five apply a lesser standard in the nature of 'adequate benefit' or 'some benefit', and one appears to apply a mixture of both").

[24] In 2000, then-Circuit Judge Samuel A. Alito described a "meaningful benefit" test as "somewhat more stringent" than a "more than trivial [or more than *de minimis*] benefit" test. <u>See</u> <u>T.R. v. Kingwood Township Bd. of Educ.</u>, 205 F.3d 572, 577 (3d Cir. 2000).

Thus, despite the difficulty in distinguishing between the standards, the Tenth Circuit has neither found that the two standards are synonymous, nor has it adopted the application of the "meaningful benefit" standard.

In this case, the DPHO's explicit references to a "meaningful educational benefit" (particularly in the absence of any discussion of the Tenth Circuit's "some benefit" standard) indicate that the incorrect legal standard was applied in determining that Z.D. was denied a FAPE in seventh grade.  Indeed, Defendants do not dispute Plaintiff's contention that the DPHO applied a "meaningful benefit" standard.  Accordingly, the DPHO's conclusion that Z.D. was deprived of a FAPE in seventh grade will be reversed and the issue remanded to the DPHO for further proceedings conducted in accordance with the appropriate standards.[25]  In remanding, the Court expresses no opinion on the ultimate resolution of this issue.

> B.    Whether the DPHO applied the proper legal standard in determining that Z.D. was denied a FAPE based on the School's refusal to provide ESY services in the summer following seventh grade (summer 2007)

Plaintiff contends that the DPHO "applied an incorrect and greatly expanded standard in ruling that the District denied Student a FAPE because his IEP did not provide for extended school year services ("ESY") during the summer after his 7th grade year."  (Appeal Brief at 30). Specifically, Plaintiff argues that the DPHO erred in finding that ESY services should have been provided "in the absence of evidence establishing actual or likely regression."  (Appeal Brief at 32).  Defendants contend that the DPHO applied the proper legal standard in concluding that the denial of ESY services deprived Z.D. of a FAPE in the summer of 2007.

---

[25]The Court has no educational expertise and will not consider this issue in the first instance.  See, e.g., Rowley, 458 U.S. at 208 (noting that "courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy" (citation and internal quotation marks omitted)).

A student's IEP may provide for ESY services "if such services are necessary for the provision of FAPE to the child."  McQueen v. Colorado Springs Sch. Dist. No. 11, 488 F.3d 868, 870 (10th Cir. 2007) (citing 34 C.F.R. § 300.106(a)(2) (2006) (internal quotation marks omitted); Johnson ex rel. Johnson v. Indep. Sch. Dist. No. 4 of Bixby, Tulsa County, Okla., 921 F.2d 1022, 1028 (10th Cir. 1990)).  The Tenth Circuit acknowledged that the "amount of regression suffered by a child during the summer months, considered together with the amount of time required to recoup those lost skills [the "regression-recoupment" analysis] . . . *is an important consideration* in assessing an individual child's need for" ESY services.  Johnson, 921 F.2d at 1027 (emphasis added).  However, the Court emphasized that "the regression-recoupment analysis is not the *only* measure used to determine the necessity of [a] structured summer program[,]" noting that, in addition to the "regression-recoupment" analysis, "courts have considered many factors important."[26]  Johnson, 921 F.2d at 1027 (emphasis added).  Thus, in this Circuit, determining whether a child is entitled to ESY services is not limited to conducting a "regression-recoupment" analysis.

The Tenth Circuit adopted the "broad premise" that "[t]he issue is whether the benefits accrued to the child during the regular school year will be significantly jeopardized if he is not provided an educational program during the summer months."  Johnson, 921 F.2d at 1028 (quoting Alamo Heights Indep. Sch. Dist. v. State Board of Educ., 790 F.2d 1153, 1158 (5th Cir.

---

[26]"These [factors] include the *degree of impairment* and the *ability of the child's parents to provide the educational structure at home,* the child's *rate of progress*, his or her *behavioral and physical problems,* the availability of *alternative resources*, the *ability of the child to interact with non-handicapped children,* the *areas of the child's curriculum which need continuous attention*, and the child's *vocational needs*, and *whether the requested service is 'extraordinary' to the child's condition*, as opposed to an integral part of a program for those with the child's condition."  Johnson, 921 F.2d at 1027 (citations omitted; emphasis added).

1986).[27]  This premise suggests that the appropriate inquiry is whether the provision of ESY

services is necessary in order to protect the child's previously accrued educational benefits from

"significant jeopardy."  However, in order to show that ESY services are necessary under this

inquiry, a child need not prove that he "has already experienced significant regression with

ineffective recoupment . . . or could be predicted to experience such regression during the

summer months, *in isolation from any other elements which may be important to an*

*individualized assessment of the child's situation*."  Johnson, 921 F.2d at 1030 (emphasis

added).[28]  The Tenth Circuit emphasizes that "[u]nder the Act, both documentation concerning

*past regression* and *predictions of future regression* should be considered, an analysis which

requires investigation into many aspects of the child's educational, home, and community life."

Johnson, 921 F.2d at 1030.

        Here, the DPHO specifically found that there was "insufficient evidence of record to find

the presence of past regression."  (Decision at 16 ¶113).  However, it is not clear that the DPHO

considered any predictions of future regression.  Indeed, the DPHO did not make any findings as

to whether Z.D. would experience regression, or whether his educational benefits would be

"significantly jeopardized" if he did not receive ESY in the summer of 2007.  Moreover, there is

---

        [27]"The analysis of whether the child's level of achievement would be jeopardized by a
summer break in his or her structured educational programming should proceed by applying not
only retrospective data, such as past regression and rate of recoupment, but also should include
predictive data, based on the opinion of professionals in consultation with the child's parents as
well as circumstantial considerations of the child's individual situation at home and in his or her
neighborhood and community."  Johnson, 921 F.2d at 1028 (footnote omitted).

        [28]Emphasizing "the individualized review demanded by the Act[,]" the Tenth Circuit
asks: "[W]hat of the child who has not shown regression in the past, but for whom *other factors*,
such as acceleration of his or her deficiencies . . . outweigh the lack of past egregious
regression?"  Johnson, 921 F.2d at 1030 (emphasis added).

little factual development in the record regarding many of the factors and aspects of Z.D.'s life that are required in order to conduct such an analysis.[29]

Finally, the DPHO's conclusion that the School improperly refused to provide ESY services in the summer of 2007 appears to be based, at least in part, on the conclusion that Z.D. was denied a FAPE in the regular seventh grade year.[30] As previously noted, however, an incorrect standard was applied in determining that Z.D. was denied a FAPE in the seventh grade. As a result, it is not clear whether and/or to what extent a re-consideration of that issue on remand will affect the DPHO's evaluation of the need for ESY services in the summer following seventh grade. Accordingly, the DPHO's conclusion that the District's refusal to provide Z.D. with ESY services in the summer of 2007 deprived him of a FAPE will be reversed and the issue remanded to the DPHO for further proceedings, to include the presentation and consideration of evidence concerning factors relevant in determining the necessity of ESY services.

     C.     *Whether the DPHO erred in finding that Z.D.'s parents were entitled to financial reimbursement for education services they obtained during the summer following Z.D.'s seventh grade year*

Plaintiff argues that the DPHO applied the incorrect standard in concluding that Z.D.'s parents were entitled to financial reimbursement for the education services they obtained in the

---

[29]For example, the DPHO noted that "[s]ummer camps and programs are one option to address" the problem of providing an "expanded core curriculum." (Decision at 16 ¶115 (citing Tr. 461-62)); (see also AR 603, Tr.432 (testifying that school districts may refer students to the New Mexico School for the Blind and Visually Impaired on a short-term basis for expanded core curricular training). However, nothing indicates the costs associated with these programs or whether these alternate resources were considered for Z.D.

[30](See, e.g., Decision at 16 ¶116 (finding that Z.D.'s need for ESY services in summer 2007 "was even greater due to the lack of adequate specialized direct instruction throughout seventh grade"); Decision at 20-21 (stating that Z.D.'s IEP team should have considered "the deprivation of services in seventh grade" as a factor "when determining his eligibility for ESY services")).

summer of 2007.  Defendants contend that nothing in the IDEA prohibits the DPHO from awarding Z.D.'s parents financial reimbursement under the circumstances of this case.  The issue of whether the DPHO properly awarded Z.D.'s parents financial reimbursement for educational services obtained in summer of 2007 will depend to a great extent on whether Z.D. was entitled to ESY services in the summer of 2007.  Accordingly, the DPHO's order that the District reimburse Parents in the amount of $1,325.00 will be set aside and the issue of whether Parents are entitled to financial reimbursement will be remanded to the DPHO to consider following a re-evaluation of whether Z.D. was entitled to ESY services in the summer of 2007.

WHEREFORE,

IT IS ORDERED that Defendants' Motion for Judgment on the Administrative Record and Brief in Support of Motion **[Docket No. 36]** is **denied**.

IT IS FURTHER ORDERED that Plaintiff Board of Education of the Los Alamos Public Schools' Individuals with Disabilities Education Act Appeal Brief **[Doc. No. 37]** is **granted** as follows:

(1)     The DPHO's decision that Z.D. was deprived of a FAPE for the entire seventh grade year is REVERSED and REMANDED to the DPHO for further consideration consistent with the provisions of this Memorandum Opinion and Order;

(2)     The DPHO's decision that Z.D. was deprived of a FAPE in the summer of 2007 is REVERSED and REMANDED to the DPHO for further consideration consistent with the provisions of this Memorandum Opinion and Order; and

(3)     The DPHO's order that the District reimburse Parents in the amount of $1,325.00 is SET ASIDE and the issue of whether Parents are entitled to such

reimbursement is REMANDED to the DPHO for consideration following a re-

evaluation of whether Z.D. was denied a FAPE in the summer of 2007 due to the

District's refusal to provide ESY services.


ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE